IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DERRICK ANDERSON, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 19-CV-2311-D |
| VS. | § | |
| | § | |
| OCTAPHARMA PLASMA, | § | |
| INCORPORATED, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Defendant BioLife Plasma Services, LP ("BioLife") moves under Fed. R. Civ.

12(b)(6) and 9(b) to dismiss this action by seven plaintiffs who complain that BioLife's

misconduct in processing donated plasma samples resulted in false positives for Human

Immunodeficiency Virus ("HIV") and Hepatitis C that were then reported to third parties and

never corrected. For the reasons explained, the court grants the motion in part and denies it

in part and grants plaintiffs leave to replead.

I

This is an action by plaintiffs Derrick Anderson ("Anderson"), Gary Baskett

("Baskett"), Marlon Griggs ("Griggs"), Demetria Jackson ("Jackson"), Daniel Seals

("Seals"), Randee Holt ("Holt"), and Brandie Carver ("Carver") against defendants

Octapharma Plasma Incorporated ("Octapharma"), CSL Plasma, Incorporated ("CSL"),

ImmunoTek Bio Centers, LLC ("ImmunoTek"), and BioLife. According to plaintiffs'

second amended complaint ("2d Compl."),[1] defendants are primarily engaged in the business of selling products and services related to plasma and other blood products. Each defendant owned, operated, and controlled a collection center. Each plaintiff (or, in the case of plaintiff Holt, her spouse) donated plasma to one of the defendants. Each plaintiff was later wrongly and negligently notified that he or she had tested positive (or, in the case of plaintiff Holt, that her spouse had testified positive) for HIV or Hepatitis C, and that he or she had been placed on a national registry of donors who had failed testing and were banned permanently from donating plasma at any donation center nationwide. Each presented subsequent test results indicating that he or she, in fact, was not positive for HIV or Hepatitis C.

Plaintiffs allege that defendants were negligent in handling, processing, and testing their respective plasma donations; improperly disclosed confidential and false medical information about the donations and negligently failed to obtain further testing on the samples or to allow new samples to be provided and tested or to do confirmatory testing on other pertinent samples, ignored negative test results, destroyed evidence, and refused to correct the record; and subsequently falsely informed plaintiffs and other third parties that plaintiffs had supposedly tested positive for HIV or Hepatitis C, which resulted in plaintiffs'

---

[1]In deciding BioLife's Rule 12(b)(6) motion, the court construes the second amended complaint in the light most favorable to the plaintiffs, accepts all well-pleaded factual allegations, and draws all reasonable inferences in their favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

being permanently banned from donating plasma nationwide, being placed on certain nationwide registries or lists, being unable to donate his or her organs or receive organ transplants, and being impaired in his or her ability to obtain health insurance, life insurance, medical treatment, and employment. Plaintiffs also assert that defendants knowingly conspired to engage in deceptive and misleading practices intended to induce plaintiffs to donate plasma, causing plaintiffs to rely on such deceit and misrepresentations to their detriment; that defendants negligently handled, processed, and/or tested plaintiffs' plasma donations, which led to false and inaccurate HIV-positive or Hepatitis C-positive readings of plaintiffs' donations; that defendants used the negligently obtained and false results but ignored other negative test results without obtaining further testing or confirmatory testing or obtaining a new sample for testing to ensure accuracy, which led defendants to falsely disclose the inaccurate results to their competitor plasma companies in the Dallas area so as to prevent plaintiffs from donating to defendants' competitors; that defendants have refused to correct the record or remove plaintiffs from the National Donor Deferral Registry ("NDDR") even after proof of defendants' errors, and such refusal is wrongly based on false-positive test results when defendants knew or should have known that plaintiffs were not HIV positive; and that, as a result of defendants' negligence, plaintiffs have been wrongly banned from donating plasma at any center nationwide and have suffered bodily and personal injuries and severe mental anguish and emotional distress.

Plaintiffs bring the following claims under Texas law: negligence; violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com.

Code Ann. §§ 17.41-.63 (West 2011 & Supp. 2018); defamation; tortious interference; conspiracy to commit tortious interference; breach of contract; fraud; violation of privacy rights; and declaratory judgment.[2]  The court's jurisdiction is based on diversity of citizenship.  BioLife moves to dismiss plaintiffs' second amended complaint under Rules 12(b)(6) and 9(b).[3]  Plaintiffs oppose the motion.

II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive BioLife's motion to dismiss, plaintiffs must allege enough facts "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough

---

[2]Holt also asserts a claim for loss of consortium.  That claim fails because Holt's other claims against BioLife are being dismissed.

[3]Octapharma, ImmunoTek, and CSL have all answered plaintiffs' second amended complaint and do not move to dismiss.

to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)).  Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "labels and conclusions."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  And "a formulaic recitation of the elements of a cause of action will not do."  *Id.* (quoting *Twombly*, 550 U.S. at 555).

"Rule 9(b) imposes a heightened pleading standard for fraud claims and requires that a party state with particularity facts supporting each element of fraud."  *Turner v. AmericaHomeKey Inc.*, 2011 WL 3606688, at *2 ( N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)), *aff'd*, 514 Fed. Appx. 513 (5th Cir. 2013) (per curiam).  "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* (quoting *Benchmark Elecs.*, 343 F.3d at 724).  More colloquially, plaintiffs must plead the "who, what, when, where, and how" of the fraud.  *United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

III

BioLife moves to dismiss the claims of all plaintiffs except Carver based on lack of standing.[4]

A

BioLife maintains that only Carver alleges any direct contact with BioLife, and that no other plaintiff alleges that he or she attempted to donate, or actually donated, plasma at a BioLife center or that BioLife communicated any information to any third parties about that plaintiff.

Plaintiffs respond that while each of the four defendants operates separately, their mutual agreement to do so under the Plasma Protein Therapeutics Association ("PPTA") guides each company and how it deals with innocent customers who are falsely accused of having a positive screening; that because of their voluntary participation in the PPTA and their collective agreement to conduct business in a way that plaintiffs allege harms the falsely accused, their complained-of conduct is attributable to each defendant, individually and collectively; that each defendant has conspired to conduct business in such a manner that any of its customers can be falsely accused of having a false-positive test, and, based on that test (which the defendant knows to be false), can be banned from donating plasma, placed on a

---

[4]BioLife appears to bring this ground of its motion under Rule 12(b)(6). *See* D. Mem. 1. Because an Article III standing challenge should be brought under Rule 12(b)(1), *see, e.g., Mary Kay Inc. v. Reibel*, 2018 WL 2984865, at *1 (N.D. Tex. June 14, 2018) (Fitzwater, J.), the court will construe BioLife's motion as if it were properly filed under Rule 12(b)(1), *see id.* (explaining that Article III standing challenge is properly brought under Rule 12(b)(1) and construing Rule 12(b)(6) motion as Rule 12(b)(1) motion).

national banned donors list (which includes future organ donations), have their loved ones banned, and be stigmatized by for having been diagnosed with a potentially fatal disease; that when the innocent customer finds out that he or she is not positive for any such disease, the customer lacks recourse to have his or her name removed from the banned list or to correct the record created with the false-positive tests; that plaintiffs and others like them cannot get these defendants to retest plaintiffs' samples, remove their names from the banned donors list, notify local health authorities that their names were submitted in error, or do anything else to allow them once again to be able to donate plasma, blood, or organs; and that the allegations against one defendant should likely apply against the others because each defendant has conspired to deal with innocent customers negligently and fraudulently.

## B

The standing doctrine addresses the question of who may properly bring suit in federal court, and "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). It "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish standing, a plaintiff must meet both constitutional and prudential requirements. *See, e.g., Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001). To establish constitutional standing, a plaintiff must show that he or she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S.Ct. 1540, 1547

(2016) (citing *Defenders of Wildlife*, 504 U.S. at 560-61). "The plaintiff[s], as the party invoking federal jurisdiction, bear[] the burden of establishing these elements." *Id.* (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

C

Regardless of what plaintiffs argue in their response brief, their second amended complaint alleges that Carver is the only plaintiff who donated plasma to BioLife. *See* 2d Compl. ¶ 25; *cf. id.* ¶¶ 19-24. Any other allegation that purports to connect another a plaintiff with BioLife must be inferred from an assertion that relates to all plaintiffs and all defendants collectively. *See id.* ¶ 26 (alleging that all defendants were negligent in their handling, processing, and testing of plasma donations; in improperly disclosing confidential and false medical information about those donations; in concluding that plaintiffs had tested positive for HIV or Hepatitis C; and in failing to obtain further testing on samples); *id.* ¶ 27 (alleging that all defendants falsely informed plaintiffs and other third parties that plaintiffs had tested positive for HIV or Hepatitis C); *id.* ¶ 28 (alleging that all defendants knowingly conspired to engage in deceptive and misleading practices intended to induce plaintiffs to donate plasma); *id.* ¶ 29 (alleging that all defendants negligently handled, processed, and/or tested plaintiffs' plasma donations, leading to false and inaccurate HIV-positive or Hepatitis C-positive readings, and disclosed the inaccurate results to their competitor plasma companies in the Dallas area); *id.* ¶ 30 (alleging that all defendants have refused to correct the record or remove plaintiffs from the NDDR, even after proof of their errors, and that such refusal is wrongly based on false-positive test results when defendants knew or should have

known that plaintiffs were not HIV positive); and *id.* ¶ 31 (alleging that all defendants'

actions have tortiously interfered with Plaintiffs' freedom and ability to donate plasma for

compensation). These allegations are insufficient to establish that each plaintiff other than

Carver suffered an injury in fact that is fairly traceable to the challenged conduct of BioLife

specifically.

To the extent plaintiffs are attempting to establish that all seven plaintiffs have

constitutional standing based on an alleged conspiracy to deal with innocent customers

negligently and fraudulently, *see* Ps. Resp. 9-10 ("Each of these companies have conspired

to deal with innocent customers negligently and fraudulently, which is why allegations

against one Defendant should likely apply against the others."), the only conspiracy claim

alleged in the second amended complaint is one for conspiracy to commit tortious

interference, *see* 2d Compl. ¶¶ 49-53. *See* D. Reply Br. at 1-2 ("To the extent any individual

Plaintiff other than Carver is seeking direct liability against BioLife for anything other than

civil conspiracy to commit tortious interference, those claims are not 'fairly traceable' to

BioLife and should be dismissed.").

Accordingly—except for plaintiffs' claim for conspiracy to commit tortious

interference—the court dismisses the claims of plaintiffs Anderson, Baskett, Griggs, Jackson,

Seals, and Holt against BioLife under Rule 12(b)(1) on the ground that they lack

constitutional standing.[5]

_____

[5]The court below dismisses plaintiffs' claim for conspiracy to commit tortious
interference on the merits, under Rule 12(b)(6), for failure to state a claim on which relief can

IV

BioLife moves to dismiss plaintiffs' DTPA claim on the ground that the second amended complaint does not allege that plaintiffs are "consumers" under the DTPA in that it fails to allege that plaintiffs sought or acquired goods or services by purchase or lease.

A

The DTPA grants consumers a cause of action for false, misleading, or deceptive acts or practices. *See* Tex. Bus. & Com. Code Ann. § 17.50(a)(1). A "consumer" is an "individual . . . who seeks or acquires by purchase or lease, any goods or services[.]" *Id*. § 17.45(4). Under the DTPA, there are two requirements for consumer status. "First, the person must seek or acquire goods or services by lease or purchase." *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 159 (Tex. App. 2007, pet. denied) (citing Tex. Bus. & Com. Code Ann. § 17.45(4)). "Second, the goods or services sought or acquired must form the basis of the party's complaint." *Fix*, 242 S.W.3d at 159 (citing *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 351-52 (Tex. 1987)). "The question of whether a plaintiff is a consumer under the DTPA is a question of law for the trial court." *Fisher Controls Int'l, Inc. v. Gibbons*, 911 S.W.2d 135, 139 (Tex. App. 1995, writ denied). "If the purchasers are not consumers, then they have no standing under the act. Only consumers may recover under Tex. Bus. & Com. Code § 17.50(a)." *Chastain v. Koonce*, 700 S.W.2d 579, 581 (Tex. 1985).

---

be granted. *See infra* § VII(B).

B

Plaintiffs first argue that they qualify as consumers based on a decision of the Tenth Circuit holding that defendant Octapharma is a "service establishment" under the Americans With Disabilities Act, 42 U.S.C. § 12181(7)(F). *See Levorsen v. Octapharma Plasma, Inc.*, 828 F.3d 1227, 1234 (10th Cir. 2016). But in *Silguero v. CSL Plasma, Inc.*, 907 F.3d 323, 329 (5th Cir. 2018), the Fifth Circuit expressly rejected the *Levorsen* court's analysis. "[A]s detailed in *Silguero*, there is no interpretation of the transaction between Plaintiffs and Defendants in which Plaintiffs could be characterized as 'willing buyer[s]' of a good or service." D. Reply Br. at 3 (alteration in original).

Plaintiffs next maintain that, having established that defendants provide a service to plasma donors, they also have "purchased" those services with the meaning of the DTPA. The court concludes, however, that plaintiffs have failed to plausibly allege that they purchased or sought to purchase any good or service from BioLife.

The second amended complaint alleges only that Carver "donated plasma on or about August 16, 2019 and August 18, 2019 at Defendant BioLife's location in Denton." 2d Compl. ¶ 25. This is insufficient of itself to enable the court to draw the reasonable inference that Carver purchased or sought to purchase a good or service from BioLife.[6] *Cf. Silguero*,

---

[6]Even if the court were inclined to agree that BioLife generally provides a service by assisting "those who wish to provide plasma for medical use . . . by supplying the trained personnel and medical equipment necessary to accomplish that goal," *Levorsen*, 828 F.3d at 1234, plaintiffs have not plausibly alleged that Carver or any other plaintiff purchased or otherwise exchanged valuable consideration for this service.

907 F.3d at 325-26 (holding that plasma collection center was not a "service establishment" under the Americans with Disabilities Act where "[t]here is no indication in the record that members of the public pay CSL Plasma in exchange for plasma collection or that it offers any services for which the public can pay.").

Accordingly, because plaintiffs have failed to plausibly allege that they are "consumers" under the DTPA, the court grants BioLife's motion to dismiss plaintiffs' DTPA claim.

V

BioLife moves to dismiss plaintiffs' negligence claim.

A

BioLife maintains on several grounds that plaintiffs' negligence claim fails to state a claim on which relief can be granted: Carver has failed to establish the existence of a legal duty that a plasma collection facility may not defer, or report, donors with reactive results; Carver's specific factual allegations in the declaration attached to her second amended complaint contradict the more general allegations of the second amended complaint; Carver expressly consented to the actions she now characterizes as tortious; and to the extent Carver seeks damages for an inability to obtain health insurance, life insurance, medical treatment, and employment, such damages are not alleged to be proximately caused by the report to the NDDR.[7]  Under Texas law, the "elements of a negligence cause of action are the existence

---

[7]The court need not separately address BioLife's last contention because it is dismissing Carver's negligence claim to the extent based on allegedly negligent reporting of

of a legal duty, a breach of that duty, and damages proximately caused by the breach." *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004).

Plaintiffs respond that they have sufficiently pleaded a negligence claim because defendants owed them a duty to obtain, handle, process,[8] and test plaintiffs' donations with reasonable care, and a duty not to erroneously or intentionally report erroneous results without retesting or obtaining and testing a second confirmatory sample.[9]

B

As a threshold matter, it is necessary to differentiate between plaintiffs' negligence claim insofar as based on allegedly negligent *reporting* of erroneous test results and as based on allegedly negligent *processing* of donated plasma. The negligence claim in the second amended complaint rests on both theories. *See* 2d Compl. ¶ 34.

In its motion to dismiss, BioLife has established that Carver consented to the reporting even of tests that contained false positives.[10] BioLife is therefore entitled to dismissal of Carver's negligence claim to the extent based on allegedly negligent *reporting* of erroneous

_____

test results.

[8]It is not apparent that there is a meaningful distinction between handling and processing donations, but this is how the claim is characterized in plaintiffs' response.

[9]Alternatively, plaintiffs posit that the court should allow them to amend to assert their negligence claims more specifically and to add a negligent misrepresentation claim. The court is granting plaintiffs leave to replead. *See infra* § XII.

[10]BioLife relies on Carver's declaration. Because the declaration is attached as an exhibit to the second amended complaint, the court can consider it in deciding BioLife's motion to dismiss. *See Lone Star Fund V (U.S.), L.P.*, 594 F.3d at 387.

test results because of Carver's express consent.

But the second amended complaint plausibly alleges that BioLife had a duty to obtain, handle, process, and test Carver's donations with reasonable care, that BioLife breached this duty by negligently handling and testing Carver's plasma donations, and that, as a result of this negligent testing, Carver was given a false HIV diagnosis and her name was reported to the NDDR. None of the other grounds on which BioLife relies for dismissal of Carver's negligence claim warrants dismissal at the Rule 12(b)(6) stage.

The court therefore grants in part and denies in part BioLife's motion to dismiss Carver's negligence claim.

VI

BioLife moves to dismiss Carver's defamation claim.

A

BioLife maintains that the documents referred to in the second amended complaint and central to Carver's defamation claim establish that she consented to the purported defamatory statements at issue; Carver has not alleged that BioLife published a false statement; Carver cannot show that the statements were defamatory to her in the context in which they were made; and Carver cannot state a claim for relief because BioLife's conditional privilege to report the test results is clear from the face of the second amended complaint.

Plaintiffs respond that the second amended complaint sufficiently alleges a claim for defamation *per se*. They also challenge whether Carver consented, and maintain that the

question whether she consented presents a factual dispute that cannot be resolved at the pleading stage.

B

In a suit by a private person against a non-media defendant in connection with a matter that is not of public concern,[11] the elements of a defamation claim are (1) the publication of a statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases. *See In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015) (identifying elements, but including burden of proving statement is false); *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995) (holding, for private-individual plaintiff against non-media defendant, that truth of statement is affirmative defense). Under these circumstances, i.e., a private-individual defamation action against a non-media defendant, the falsity of the defamatory statement is generally presumed, and the truth of the statement is an affirmative defense that must be proved by the defendant. *See Randall's Food Mkts, Inc.*, 891 S.W.2d at 646 ("In suits brought by private individuals, truth is an affirmative defense to slander." (footnote and citation omitted)); *Thomas-Smith v. Mackin*, 238 S.W.3d 503, 509 (Tex. App. 2007, no pet.) ("Where, as here, there is not alleged to be a public figure plaintiff, a media defendant, or a defamatory statement involving a matter of public concern, the falsity of the statement is

_____

[11]BioLife argues that "[t]he public has an interest in the quality of donated plasma," D. Mem. 14, but it does not contend that the reporting of reactive test results to the NDDR is a matter of public concern.

generally presumed, and the truth of the statement is an affirmative defense that must be proved by the defendant." (footnote and citation omitted)); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 73.005(a) (West 2011 & Supp. 2018) ("The truth of the statement in the publication on which an action for libel is based is a defense to the action.").

"Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings." *Sivertson v. Clinton*, 2011 WL 4100958, at *2 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)); *see also White v. Padgett*, 475 F.2d 79, 82 (5th Cir. 1973) (holding that claim is "subject to dismissal under Rule 12(b)(6) . . . when [an] affirmative defense clearly appears on the face of the complaint.").

This is plaintiffs' defamation claim:

> Defendants defamed Plaintiffs by falsely disclosing confidential medical information, i.e. inaccurate lab test results to other Dallas plasma donation companies in the Dallas area, which falsely stigmatized them and was the direct cause of Plaintiffs' inability to donate plasma anywhere else, as well as their damages as set forth above and below. Such slander and libel constitute defamation per se.

2d Compl. ¶ 47. As specified in Carver's declaration, which is properly considered, *see supra* note 10, Carver is alleging that BioLife reported her "unsuitable test results" and that she was added to the NDDR. 2d Compl. Carver Decl. at ¶¶ 5, 6. But Carver has failed to allege that her initial results were not, in fact, reactive, even if this was determined to be a false-positive result.

Because it is clear from the face of the second amended complaint (i.e., the attached declaration that is properly considered), that the information BioLife published to the NDDR—i.e., Carver's initial reactive test result—was true, the court holds that BioLife is entitled to dismissal of plaintiffs' defamation claim against BioLife.[12]

## VII

Next, the court considers plaintiffs' claims for tortious interference and conspiracy to commit tortious interference.

## A

Assuming that Carver's claim for tortious interference can only be based on an alleged interference with a prospective business relationship (not a claim for tortious interference with an existing contract), BioLife moves to dismiss on the grounds that Carver has failed to specify any potential business relationships she would have entered into and that she cannot establish an independently tortious or unlawful act because BioLife's purported interference was privileged or justified. Regarding plaintiffs' claim for conspiracy to commit tortious interference, BioLife argues, *inter alia*, that because Carver fails to state a claim for tortious interference, her conspiracy claim likewise fails.

Plaintiffs respond that they have sufficiently alleged that BioLife's conduct was independently tortious or wrongful, and that they have satisfied their burden in stating their

---

[12]The court does not reach any of the other grounds on which BioLife relies and expresses no view on how it would rule on these grounds if plaintiffs replead a defamation claim.

claim for tortious interference.  Regarding their conspiracy claim, plaintiffs quote the allegations in the second amended complaint, which they maintain are sufficient to plead a claim for conspiracy to commit tortious interference.

B

To prevail on a claim for tortious interference with prospective business relations, a plaintiff must establish

> (1) there was a reasonable probability that [she] would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*Sanger Ins. Agency v. HUB Int'l, Ltd.*, 802 F.3d 732, 748 (5th Cir. 2015) (quoting *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013)).

Plaintiffs have failed to plead any allegations establishing a reasonable probability that Carver would have entered into a business relationship with a third party.  They allege, *inter alia*, that "Defendants tortiously interfered with Plaintiffs' rights to provide donations and be compensated for same by other plasma companies," 2d Compl. ¶ 49, but they neither allege a prospective business relationship nor a reasonable probability that Carver would have entered into any such relationship.  Accordingly, the court grants BioLife's motion to dismiss plaintiffs' claim for tortious interference with prospective business relations.  *See, e.g., I Love Omni, LLC v. Omnitrition Int'l, Inc.*,  2017 WL 3086035, at *3 (N.D. Tex. July

20, 2017) (Fish, J.) (granting motion to dismiss tortious interference claim where plaintiff "fail[ed] to sufficiently plead that there was a reasonable probability that she would have entered into a business relationship with a third party."); *M-I LLC v. Stelly*, 733 F.Supp.2d 759, 776 (S.D. Tex. 2010) (same).

For the same reason, the court also dismisses plaintiffs' claim for conspiracy to commit tortious interference. Civil conspiracy is a "derivative tort" in that "a defendant's liability for conspiracy depends on participation in some underlying tort." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). Where the tort claim underlying a claim for civil conspiracy has been dismissed, the civil conspiracy claim must also be dismissed. *See Askanase v. Fatjo*, 130 F.3d 657, 676 (5th Cir. 1997); *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 438 (Tex. 1997). Because this court is dismissing plaintiffs' tortious interference claim, it also dismisses their claim for conspiracy to commit tortious interference. *See, e.g., Three Legged Monkey, LP v. City of El Paso*, 2014 WL 12639964, at *7 (W.D. Tex. Nov. 10, 2014) (granting motion to dismiss conspiracy claim, noting "Patriot Place and Brandt cannot be liable for tortious interference, and consequently, cannot be liable for conspiracy to commit tortious interference.").

VIII

BioLife next moves to dismiss Carver's claim for breach of contract.

A

"A breach of contract claim under Texas law requires proof of four elements: (1) the existence of a valid contract, (2) plaintiff's performance of duties under the contract, (3)

- 19 -

defendants' breach of the contract, and (4) damages to plaintiff resulting from the breach." *Orthoflex, Inc. v. ThermoTek, Inc.*, 983 F.Supp.2d 866, 872 (N.D. Tex. 2013) (Fitzwater, C.J.) (citation omitted), *aff'd sub nom. Motion Med. Techs., L.L.C. v. ThermoTek, Inc.*, 875 F.3d 765 (5th Cir. 2017). BioLife moves to dismiss Carver's claim for breach of contract on the grounds that she does not specify what provisions of any agreement between her and BioLife have been breached and she can show no breach of any agreement because she expressly consented to the very actions for which she now sues.

Plaintiffs respond by quoting the second amended complaint and arguing that "[i]mplicit" in the parties' contract "was Defendants' obligation to protect Plaintiff's plasma donation sample from contamination and false testing and to protect Plaintiffs' private information," Ps. Resp. 22, and that defendants breached that contract by mishandling plaintiffs' plasma and improperly disclosing false information in violation of plaintiffs' privacy rights, banning them based on false results, and refusing to correct the record when proved wrong. Plaintiffs also posit that, even if Carver does not have a valid and enforceable breach of contract claim, she "may very well have an actionable cause of action for negligent misrepresentation." *Id.*

B

The court grants BioLife's motion to dismiss plaintiffs' breach of contract claim asserted against them. In the second amended complaint, plaintiffs allege the following as their breach of contract claim:

Defendants agreed with Plaintiffs to properly collect, process, handle, and test Plaintiffs' plasma donations accurately and to compensate Plaintiffs for their donations. Implicit in that contract was Defendants' obligation to protect Plaintiffs' plasma and private information, but Defendants breached that contract by mishandling Plaintiffs' plasma and improperly disclosing false information in violation of Plaintiffs' privacy rights, banning them based on false results and refusing to correct the record when proven wrong, for which Plaintiffs seek[] contractual damages.

2d Compl. ¶ 55. But plaintiffs have failed to specify any agreement between Carver and BioLife under which BioLife promised to "properly collect, process, handle, and test Plaintiffs' plasma donations accurately." *Id.* Similarly, to the extent plaintiffs allege that BioLife breached its contract with Carver by "improperly disclosing false information in violation of Plaintiffs' privacy rights, banning them based on false results and refusing to correct the record when proven wrong," *id.*, plaintiffs have failed to plausibly allege that BioLife contractually agreed *not* to engage in the conduct about which Carver complains.[13]

---

[13]To the contrary, a document entitled "Testing Information and Consent," to which Carver electronically agreed on August 16, 2019, appears to expressly contemplate the very conduct on which plaintiffs base their breach of contract claim, stating:

In order to monitor and maintain the quality of plasma and/or blood collected at this facility, samples of your blood and plasma will be tested for indication of agents, which may transmit infectious disease or otherwise make your plasma or blood unsuitable for our use. . . . *In accordance with applicable regulations, some positive test results, including screening results which may later confirm negative, will mean you can no longer donate plasma or blood. If you test positive for hepatitis or HIV, your name will be added to a national list of those unable, for any reason, to be considered as plasma donors in the future.*

Because plaintiffs have failed to plausibly allege a specific contractual provision that BioLife allegedly breached, the court grants BioLife's motion to dismiss the breach of contract claim alleged against it.

IX

BioLife moves under Rules 9(b) and 12(b)(6) to dismiss plaintiffs' fraud claim.[14]

A

In support of this claim, plaintiffs allege that "Defendants withheld essential information in order to induce Plaintiffs to donate plasma upon which Plaintiffs relied to their detriment as set forth above, including the misrepresentations specifically set forth in paragraphs 40 and 50."[15] 2d Compl. ¶ 56.

---

D. App. 5. (emphasis added). This document also states that there is a "small possibility of a false positive test result. In other words, you would test positive when you are actually negative and therefore, not infected." *Id.*

[14]The elements of common law fraud in Texas are:

> (1) a material representation was made; (2) it was false when made; (3) the speaker either knew it was false, or made it without knowledge of its truth; (4) the speaker made it with the intent that it should be acted upon; (5) the party acted in reliance; and (6) the party was injured as a result.

*Choe v. Bank of Am., N.A.*, 2013 WL 3196571, at *5 (N.D. Tex. June 25, 2013) (Fitzwater, C.J.) (quoting *Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 858 (5th Cir. 2004) (Texas law) (citations omitted)), *aff'd*, 605 Fed. Appx. 316 (5th Cir. 2015).

[15]Paragraph 50 of the second amended complaint lists 11 objects of defendants' alleged conspiracy, including that defendants conspired "[t]o refer to permanent bans in misleading ways as 'deferments,' suggesting temporary durations," "[to] create a deceptive and misleading atmosphere of a professional medical practice with false adherence to medical privacy and confidentiality when such was not the case," and "[t]o conceal and fail

- 22 -

BioLife moves to dismiss plaintiffs' fraud claim, contending that plaintiffs have failed to satisfy the heightened pleading standard of Rule 9(b). It posits that Carver has failed in her declaration to identify with sufficient specificity the particulars of an alleged fraud; that the allegations in the second amended complaint are insufficient to identify the "who, what, where, when, and how" of the purported fraud as it relates to BioLife because they refer to all defendants collectively and do not set forth who at BioLife allegedly made the representations to Carver or when and in what form the representations were allegedly made; and that Carver cannot show that she actually or justifiably relied on any purported representations because her allegations are contradicted by the written agreements she signed before donating plasma, including her express acknowledgment that false-positive test results were a possibility and would result in an inability to make further donations even if later shown to be a false positive.

Plaintiffs respond that they have alleged that defendants made material misrepresentations that were false; that defendants knew or should have known that each plaintiff did not actually have the "loathsome disease Defendants reported them as having," Ps. Resp. 23; that defendants made material misrepresentations to each plaintiff and to state health authorities, their coconspirator plasma companies, and the NDDR[16]; that defendants

_____

to disclose all of the foregoing facts to donors so as to induce them to donate plasma under fraudulent circumstances," 2d Compl. ¶ 50. Paragraph 40 lists several ways that defendants allegedly violated the DTPA.

[16]BioLife correctly points out in its reply that statements made to state health authorities, other plasma companies, and the NDDR cannot form the basis for plaintiffs'

- 23 -

made these material misrepresentations when they knew or should have known that the test results were false-positive screenings requiring further testing as prescribed by the Code of Federal Regulations; that "Defendants were aware that they were banning, reporting, and unfairly stigmatizing Plaintiffs based on what Defendants knew to be false-positive test results," *id.*; that defendants intended to induce plaintiffs to act upon the representations by soliciting plaintiffs to provide plasma donations for compensation but failing to properly "inform[] Plaintiffs that Defendants' own negligence in collecting, handling, and testing the samples would permanently ban Plaintiffs from donating blood, plasma and organs anywhere in North America as well as impair their ability to obtain and retain employment, healthcare, health insurance and even personal relationships," *id.* at 24; that defendants did not inform plaintiffs that even given evidence refuting false-positive results, defendants would refuse to correct the record; that if plaintiffs had been made aware that defendants would be able to permanently ban them based on false positive test results which defendants knew to be false at the time of their reporting, plaintiffs would never have agreed to donate plasma in the first place; and that plaintiffs "actually and justifiably relied on the representations and suffered injuries as a result," *id.*

---

fraud claim because the statements were not made to Carver and there is no allegation that Carver relied on those representations.

B

Plaintiffs, at a minimum, have failed to plead their fraud claim with the particularity required by Rule 9(b).[17]  They refer generally to misrepresentations and omissions, but they do not specify the particulars of time, place, and contents of the false representations or omissions, the identity of any person making a misrepresentation or omission, or what the person obtained thereby.  The court therefore dismisses plaintiffs' fraud claim based on their failure to comply with Rule 9(b).

X

BioLife moves to dismiss plaintiffs' claim for "violation of privacy rights."

BioLife moves to dismiss this claim on the grounds that plaintiffs do not identify what state law BioLife purportedly violated; that it is not clear that Texas common law recognizes a tort of "violation of privacy rights"; that to the extent plaintiffs intended to bring a claim for "invasion of privacy," the Texas Supreme Court rejected this tort in *Cain v. Hearst Corp*., 878 S.W.2d 577, 579 (Tex. 1994); and that even if Carver could state a claim for "violation of privacy rights," this claim would fail because she expressly consented to the disclosures on which she bases her claim.

Plaintiffs respond that they have pleaded enough facts to provide defendants with "fair notice and the facts giving rise to the claim[]."  Ps. Resp. 25.  In support of their claim for

---

[17]Because the court holds that plaintiffs have failed to satisfy the heightened pleading standard of Rule 9(b), it does not address the other alleged pleading deficiencies in plaintiffs' fraud claim, such as plaintiffs' failure to plausibly allege that Carver relied on any particular misrepresentation or omission when she decided to donate plasma.

"violation of privacy rights," plaintiffs allege:

> Defendants violated Plaintiffs' privacy rights by disclosing false, but private and confidential medical information in violation of state law. Defendants wrongfully and fraudulently disclosed Plaintiff's personal, private, and confidential and false medical information to competitor plasma companies, to State health authorities, and to the [NDDR] in violation of state law and donors' privacy rights.

2d Compl. ¶ 57.

These court holds that these conclusory allegations are insufficient to plausibly plead that BioLife violated any particular state law with respect to Carver. Accordingly, the court grants BioLife's motion to dismiss plaintiffs' claim for "violation of privacy rights."

## XI

Finally, the court addresses BioLife's motion to dismiss plaintiffs' claim for declaratory judgment.

## A

Plaintiffs seek a declaratory judgment that they are not HIV positive or positive for Hepatitis C; they request that defendants "be ordered and compelled to provide mandatory injunctive relief to correct each of their records, including any national database entries, registries, or lists," 2d Am. Compl. ¶ 59; and they request that the court declare that they are not HIV positive or positive for Hepatitis C and that their test results were false-positive test results.

BioLife moves to dismiss plaintiffs' declaratory judgment claim on the grounds that there is no justiciable controversy between the parties regarding Carver's HIV status and that

declaratory judgments regarding medical diagnoses are generally an inappropriate request for relief as a declaratory judgment.

Carver responds that "[b]eing falsely accused of having a foul or loathsome disease, placed on a banned list with no means of being removed despite the allegations being erroneous is actual present and future harm that could be addressed by a declaratory judgment." Ps. Resp. 26.

B

Federal courts have broad discretion to grant or refuse declaratory judgment. *See Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). It gives federal courts the competence to declare rights, but it does not impose a duty to do so. *See Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962) (per curiam). A declaratory judgment action is merely a vehicle that allows a party to obtain "early adjudication of an actual controversy." *Collin Cty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170 (5th Cir. 1990). Its purpose is to allow "parties [to] avoid damages that might otherwise accrue." *Id.* at 172 (citation omitted).

This court has previously declined in its discretion to enter declaratory judgments when parties have sought to remedy past wrongs. *See Garcia v. Bank of N. Y. Mellon*, 2012 WL 692099, at *4 (N.D. Tex. Mar. 5, 2012) (Fitzwater, C.J.) (declining to grant declaratory

relief because "[p]laintiffs are not attempting by their declaratory judgment action to help the parties avoid damages that might otherwise accrue[,] . . . [t]hey are [instead] essentially seeking a remedy for a past alleged wrong."). The relief that plaintiffs seek—even in the form of mandatory injunctive relief — is essentially to remedy a past alleged wrong. The court therefore declines in its discretion to enter a declaratory judgment, and it dismisses this claim.

## XII

Plaintiffs request in the alternative that, if the court does not deny BioLife's motion to dismiss in its entirety, they be given leave to amend to address any alleged deficiencies in the second amended complaint. The court's usual practice when granting a motion to dismiss is to permit plaintiffs at least one opportunity to replead,[18] unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal. *See In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." (citation omitted)). Here, plaintiffs have explicitly requested leave to amend their second amended complaint,

_____

[18]Although plaintiffs have already amended their complaint twice, they filed their first amended complaint shortly after filing suit, before defendants filed responsive pleadings, and plaintiffs filed their second amended complaint to comply with a court order directing that they properly plead diversity jurisdiction.

and it is not clear that the defects in all of the claims being dismissed today are incurable. The court therefore grants plaintiffs leave to replead. They must file a third amended complaint within 28 days of the date this memorandum opinion and order is filed.

*   *   *

For the reasons explained, the court grants in part and denies in part BioLife's motion to dismiss, and it grants plaintiffs leave to file a third amended complaint within 28 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

March 6, 2020.

SIDNEY A. FITZWATER
SENIOR JUDGE