IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DERRICK ANDERSON, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:19-CV-2311-D |
| VS. | § | |
| | § | |
| OCTAPHARMA PLASMA, | § | |
| INCORPORATED, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In *Anderson v. Octapharma Plasma, Inc.*, (*Anderson II*), 2020 WL 7245075 (N.D.

Tex. Dec. 9, 2020) (Fitzwater, J.), the court granted in part and denied in part defendants'

motions to dismiss under Fed. R. Civ. P. 12(b)(6) and 9(b), or for judgment on the pleadings

under Rule 12(c). *Id*. at *23. In doing so, the court *sua sponte* raised four grounds for

dismissal and permitted plaintiffs to file an opposition response before dismissing the claims

on those grounds. Plaintiffs have now responded, and one defendant, CSL Plasma, Inc.

("CSL"), has filed a second Rule 12(c) motion. For the reasons that follow, the court in

deciding the motions to dismiss and for judgment on the pleadings relies on most of the

grounds that it raised *sua sponte* in *Anderson II*; grants CSL's Rule 12(c) motion; and

dismisses the action against CSL with prejudice by Rule 54(b) final judgment entered today.

Because the pertinent background facts and procedural history of this case are set out in two prior memorandum opinions and orders, *see Anderson II*, 2020 WL 7245075, at \*1-2; *Anderson v. Octapharma Plasma, Inc.* (*Anderson I*), 2020 WL 1083608, at \*1-2 (N.D. Tex. Mar. 6, 2020) (Fitzwater, J.), the court will recount them only as necessary to understand this decision. The court will apply the standards for addressing dismissal under Rules 9(b), 12(b)(6), and 12(c) set out in *Anderson II*, 2020 WL 7245075, at \*3.[1]

This is a diversity action by eight plaintiffs who assert Texas-law claims against four defendants based on their alleged misconduct in processing donated plasma samples that resulted in false positive screening results for Human Immunodeficiency Virus ("HIV") and Hepatitis C that were reported to third parties and never corrected. The defendants are Octapharma Plasma, Incorporated ("Octapharma"), CSL, ImmunoTek Bio Centers, LLC ("ImmunoTek"), and BioLife Plasma Services L.P. ("BioLife"). According to the third amended complaint, each defendant owns, operates, and controls a plasma collection center.

---

[1]In deciding whether defendants are entitled to dismissal under Rule 12(b)(6) or Rule 12(c), the court construes the third amended complaint in the light most favorable to plaintiffs, accepts all well-pleaded factual allegations, and draws all reasonable inferences in their favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "The court's review [of a Rule 12(b)(6) or Rule 12(c) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

Plaintiffs[2] donated plasma at one of the defendants' facilities; plaintiffs[3] were incorrectly notified that they had tested positive for HIV or Hepatitis C; and as a result of the false positive test results, their names were placed on the National Donor Deferral Registry ("NDDR")[4] even though they presented subsequent test results indicating that they did not, in fact, have HIV or Hepatitis C.

On September 27, 2019 plaintiffs filed this lawsuit, alleging claims under Texas law for negligence; violation of the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (West 2011 & Supp. 2018); defamation; tortious interference; conspiracy to commit tortious interference; breach of contract; fraud; violation of privacy rights; and declaratory judgment.

In *Anderson I* the court granted in part and denied in part BioLife's motion to dismiss the claims asserted against it. *Anderson I*, 2020 WL 1083608, at *12. Plaintiffs then filed a third amended complaint in which they re-pleaded the claims that the court dismissed in *Anderson I*.

In *Anderson II* the court dismissed all of plaintiffs' re-pleaded claims except their

---

[2]In the case of plaintiff Randee Holt ("Holt"), plaintiffs allege that she was wrongly and negligently notified that her husband had tested positive for Hepatitis C and that he and Holt had been placed on the National Donor Deferral Registry.

[3]*See supra* note 2.

[4]Plaintiffs allege that the NDDR is "a national registry of donors who failed testing and [are] banned permanently from donating plasma at any plasma donation center in the nation." 3d Compl. ¶ 20.

defamation[5] and declaratory judgment claims.  In doing so, it relied on four grounds for dismissal that it raised *sua sponte*:

> that BioLife is entitled to dismissal of plaintiffs' negligent reporting claim because neither [Brandie Carver ("Carver")] nor [Christopher Richie ("Richie")] disputes that he or she in fact tested reactive for HIV; that BioLife, Octapharma, and ImmunoTek are entitled to dismissal of plaintiffs' negligent testing claim on the alternate basis that plaintiffs have failed to plausibly allege that, under Texas law, plasma collection centers owe donors a duty to obtain, handle, process, and test blood donations with reasonable care; that BioLife is entitled to dismissal of plaintiffs' negligent testing claim on the alternate ground that plaintiffs have failed to plausibly allege the breach of a legal duty; and that to the extent plaintiffs base their fraud claim on defendants' alleged failure to disclose, they have failed to plead any duty to disclose the allegedly withheld information.

*Anderson II*, 2020 WL 7245075, at *23.  To ensure that the process was procedurally fair, the court granted plaintiffs 21 days to file a brief in opposition to dismissing their claims for negligent reporting, negligent testing, and fraud on the grounds that the court had raised *sua sponte*.  Plaintiffs have now responded, and defendant CSL has filed a second Rule 12(c) motion seeking dismissal of plaintiff Demetria Jackson's ("Jackson's") remaining claims on grounds that it did not include in its first motion.

---

[5]Although the court denied defendants' motions to dismiss the defamation claims alleged in the third amended complaint, it did dismiss the defamation claim of plaintiff Holt, concluding that plaintiffs had failed to plausibly allege that Octapharma published any defamatory statement with respect to her.  *See Anderson II*, 2020 WL 7245075, at *12.

II

The court begins with the negligent reporting claim that plaintiffs Carver and Richie

assert against BioLife.

A

In *Anderson II* the court assumed *arguendo* that defendants owed donors a duty "not

to erroneously report" screening results to third parties, including the NDDR, but it

concluded that plaintiffs had not plausibly alleged that defendants' conduct breached that

duty. *Anderson II*, 2020 WL 7245075, at *8. The court explained:

> In the third amended complaint, plaintiffs allege that defendants
> notified each donor-plaintiff that the donor had tested positive
> for HIV or Hepatitis C; that the donor-plaintiffs' names were
> placed on the NDDR; and that plaintiffs presented subsequent
> test results indicating that they do not in fact have HIV or
> Hepatitis C. But plaintiffs do *not* plausibly allege, nor do they
> argue in their response briefs, that what defendants actually
> reported to the NDDR—i.e., plaintiffs' positive screening
> results—was erroneous. As Octapharma explains in its brief, "a
> subsequent negative *diagnostic* test for an infectious disease
> does not render a reactive or positive *screening* test false."
> Accepting as true plaintiffs' allegation that they later established
> that their initial screening test results were false positives,
> plaintiffs do not dispute that they *did*, in fact, initially test
> positive for HIV or Hepatitis C. Defendants could not have
> breached an alleged duty not to erroneously report test results to
> third parties, including the NDDR, by accurately reporting their
> donors' initial screening results.

*Id.* (citations omitted). On this basis, the court granted the motions for judgment of CSL,

Octapharma, and ImmunoTek as to plaintiffs' claim for negligent reporting. *Id*.

The court then raised *sua sponte* that the other defendant—BioLife— was entitled to

dismissal of Carver's and Richie's negligent reporting claims on this same ground. *Id.* at *9. The court reasoned that, in the third amended complaint, plaintiffs alleged that BioLife reported Carver's and Richie's false-positive test results to the NDDR, but plaintiffs failed to allege in the third amended complaint, or in their response to BioLife's motion to dismiss, that Carver and Richie did not actually test reactive for HIV or that the test results that BioLife reported were not the actual test results. The court raised *sua sponte* that, because it was undisputed that Carver and Richie actually tested reactive for HIV, BioLife's reporting these test results could not have been negligent. *Id.*

Plaintiffs maintain in their opposition response that BioLife had a "plethora of legal duties set forth by federal law with respect to proper testing and reporting," including prompt subsequent follow-up testing following an initial positive reaction screening; reporting follow-up testing results to consignees; properly maintaining and updating donor records to reflect correct follow-up testing results; notifying donors of initial and subsequent testing results; and maintaining, updating, and revising records to remove donors who have met acceptable requalification standards. Ps. Br. 5. They maintain that they have pleaded that BioLife breached these alleged duties by notifying Carver and Richie that they had tested positive for HIV and had been placed on the NDDR, without informing them of the results of confirmatory testing; by failing to update Carver's and Richie's records to indicate that subsequent testing was negative; and by failing to remove them from the deferred donor list.

B

As a preliminary matter, the court notes that plaintiffs have not actually engaged the basis on which this court raised this ground for dismissal *sua sponte*: that their third amended complaint and opposition response are deficient in their failure to plausibly plead (in their complaint) and argue (in their opposition response) that Carver and Richie did not actually test reactive for HIV or that the test results that BioLife reported were not the actual test results. *See Anderson II*, 2020 WL 7245075, at *9.

Rather than tackle this ground head-on, plaintiffs attempt to rely on other legal duties prescribed by federal law. But their reliance is misplaced. The third amended complaint does not plausibly plead that BioLife violated any of the federal regulations that plaintiffs now cite. Nor do plaintiffs allege that any of these regulations is the source of a duty that BioLife allegedly breached. *See* 3d Compl. ¶¶ 36, 38 (alleging negligence based on a "duty . . . not to erroneously report such results without retesting or obtaining and testing a second sample," and breach of this duty by "negligently disclos[ing] false-positive test results and refus[ing] to correct the record or remove falsely stigmatized donors from their national registry.").[6] And assuming *arguendo* that plaintiffs *did* properly plead that BioLife violated

---

[6]Plaintiffs request that, if the court dismisses their negligent reporting or negligent testing claims, they be permitted to amend their complaint to identify the federal regulations that they cite in their opposition response. *See* Ps. Br. 8, 11. But the court is not dismissing the negligence claims based on plaintiffs' failure to plead these regulations. It is instead dismissing these claims because plaintiffs have failed to allege sufficient supporting *facts* to plead plausible claims. The court therefore declines, for the reasons explained more fully in *Anderson II*, to grant plaintiffs yet another opportunity to plead their negligence claims against BioLife. *See Anderson II*, 2020 WL 7245075, at *22.

the regulations that plaintiffs cite in their opposition response, the court would dismiss plaintiffs' claims on behalf of Carver and Richie against BioLife for other reasons.

First, to the extent that the federal regulations require further testing for HIV on a reactive plasma donation, *see* 21 C.F.R. § 610.46(a)(2), plaintiffs have not plausibly alleged that BioLife did not "further test[ ]" their reactive samples as required under federal law. *See* 21 C.F.R. § 610.40(e) ("You must further test each donation . . . found to be reactive by a donor screening test performed under paragraphs (a) and (b) of this section using a licensed, approved, or cleared supplemental test, when available. If no such supplemental test is available, you must perform one or more licensed, approved, or cleared tests as adequate and appropriate to provide additional information concerning the reactive donor's infection status."). Plaintiffs allege, with respect to Carver, that a representative of BioLife notified her that she had tested positive for HIV and had been placed on the NDDR "despite the fact that the BioLife representative knew that Plaintiff Carver's test result was not accurate, but instead was a false-positive." 3d Compl. ¶ 26. This allegation permits only the reasonable inference that BioLife *did* further test Carver's reactive sample; otherwise the BioLife representative would have had no reason to know at that time that Carver's test result was a false-positive. With respect to Richie, plaintiffs specifically allege that BioLife conducted further testing, alleging that, "[i]n truth, *confirmatory testing done by Defendant BioLife* proved that [Richie] tested negative and that the initial false-positive screening was wrong." *Id.* ¶ 27. Thus plaintiffs have not plausibly alleged that BioLife violated its "further testing" obligations under the federal regulations.

Second, plaintiffs do not plausibly allege that defendants failed to notify them of the results of further testing, as the federal regulations require. *See* 21 C.F.R. § 610.46(a)(3) ("You must notify consignees of the results of further testing for HIV, or the results of the reactive screening test if further testing under paragraph (a)(2) of this section is not available."); 21 C.F.R. § 630.40(a) ("You, an establishment that collects blood or blood components, must make reasonable attempts to notify any donor . . . who has been deferred based on the results of tests for evidence of infection with a relevant transfusion-transmitted infection(s) as required by § 610.41(a) of this chapter[.] You must attempt to obtain the results of further testing required under § 610.40(e) of this chapter prior to notifying a donor of the deferral. If notification occurs prior to receipt of such results, you must also notify a deferred donor of the results of the further testing."). The third amended complaint alleges that confirmatory testing proved that Carver's and Richie's initial positive screening results were false-positives. But plaintiffs do not allege that BioLife failed to notify Carver and Richie of their positive initial screens or negative confirmatory tests. *See* 3d Compl. Ex. F (Carver declaration) (stating that BioLife representative informed her "that the results initially showed reactive and then when the lab conducted deeper testing the results came back negative, indicating that BioLife's first screening was a false positive."); *id.* at Ex. G (Richie declaration) (averring that "BioLife sent me a letter indicating that my donation in November had tested positive for the HIV virus. The letter also indicated that a sample of my November plasma donation was also sent to BioLife Testing Laboratory in Georgia for confirmatory testing which tested my plasma donation and resulted in a negative HIV test.").

Third, plaintiffs do not plausibly plead a negligent testing claim based on the alleged breach of BioLife's duty to "accurately maintain and update reporting to remove donors from the deferred donor list." Ps. Br. 7.  In support of their argument, plaintiffs rely on 21 C.F.R. § 606.160(e)(4), which provides that "[e]stablishments must revise the cumulative record [of donors deferred from donation under § 610.41] to remove donors who have been requalified under § 610.41(b) of this chapter," and 21 C.F.R. § 610.41(b), which provides that "[a] deferred donor subsequently may be found to be eligible as a donor of blood or blood components by a requalification method or process found acceptable for such purposes by [the Food and Drug Administration ("FDA")].  Such a donor is considered no longer deferred."  But plaintiffs have not plausibly pleaded that BioLife violated either of these regulations: they neither include in the third amended complaint *any* allegation regarding BioLife's cumulative record, nor do they plausibly allege that they have been "requalified" by a method or process found acceptable for such purposes by the FDA.  And to the extent plaintiffs base their negligent reporting claim on information defendants reported *to the NDDR*,[7] neither § 606.160(e)(4) nor § 610.41(b) even mentions the NDDR, much less

---

[7]Moreover, as the court held in *Anderson II*:

> To the extent plaintiffs allege, in support of their *defamation* claim, that defendants reported plaintiffs' false positive screening results "as positive test results (without disclosing the known negative test results)," 3d. Compl. ¶ 51, the court has previously held (making a prediction under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)) that "a plaintiff 'cannot maintain a negligence claim based solely on a duty not to defame.'" *Charalambopoulos v. Grammar*, 2015 WL 390664, at *22 (N.D.

requires BioLife to "remove falsely stigmatized donors from the[] national registry." 3d Compl. ¶ 38.

Accordingly, for the reasons explained here and in *Anderson II*, the court dismisses plaintiffs' negligent reporting claim on behalf of Carver and Richie against BioLife.

III

The court now turns to plaintiffs' negligent testing claim.

A

In *Anderson II* the court, in the alternative, assumed *arguendo* that, under Texas law, plasma collection companies owe donors a duty of reasonable care with respect to testing plasma donations for evidence of communicable disease. *See Anderson II*, 2020 WL 7245075, at *10. But it concluded that the conclusory allegation of the third amended complaint that "defendants breached the[] duties [listed in ¶ 36,] which led to tainted and/or false results," 3d. Compl. ¶ 36, did not plausibly allege that defendants' conduct breached that duty—i.e., that they acted negligently. The court granted CSL's, ImmunoTek's, and Octapharma's motions to dismiss plaintiffs' negligent testing claim on the alternative ground

_____

Tex. Jan. 29, 2015) (Fitzwater, J.) (quoting *Oliphant v. Richards*, 167 S.W.3d 513, 518 (Tex. App. 2005, pet. denied)). Thus to the extent plaintiffs' negligence claim is based on the same conduct as their defamation claim, the court holds that plaintiffs' negligence claim is "not viable as a matter of law." *Id.* (dismissing plaintiff's negligence claims under the Texas Citizens' Participation Act).

*Anderson II*, 2020 WL 7245075, at *8 n.15.

that plaintiffs had failed to plausibly allege the breach of a legal duty. It then raised *sua sponte* that BioLife was entitled to dismissal of plaintiffs' negligent testing claim on this same alternate ground. *Anderson II*, 2020 WL 7245075, at *10.

B

As it did in *Anderson II*, the court will assume *arguendo* that, "under Texas law, plasma collection companies . . . owe donors a duty of reasonable care with respect to testing plasma donations for evidence of communicable disease." *Anderson II*, 2020 WL 7245075, at *10.[8] It therefore focuses on whether plaintiffs have plausibly pleaded that BioLife breached that duty.

In their opposition response, plaintiffs argue that BioLife had a duty under the federal regulations to test each individual donor sample and that BioLife breached its duty of reasonable care by "fail[ing] to properly extract, store, process, test, and/or handle plaintiffs' blood plasma samples," Ps. Br. 10, and by "pool[ing] donations and assign[ing] false-positive results to all donors within said pool," *id.* at 11, rather than testing each sample individually.

---

[8]Because all four defendants are entitled to dismissal of plaintiffs' negligent testing claim on the ground that plaintiffs have failed to plausibly allege the breach of a legal duty, the court need not address the first ground for dismissal that it raised *sua sponte* in *Anderson II*—i.e., whether plaintiffs have plausibly alleged that, under Texas law, BioLife, Octapharma, or ImmunoTek owes donors a duty to obtain, handle, process, and test blood donations with reasonable care. *See Anderson II*, 2020 WL 7245075, at *10 (raising *sua sponte* that BioLife, Octapharma, and ImmunoTek are entitled to dismissal on the ground that plaintiffs have not plausibly alleged a duty with respect to the negligent testing claim, and granting CSL's, ImmunoTek's, and Octapharma's motions to dismiss the negligent testing claim on the alternative ground that plaintiffs have failed to plausibly allege the breach of a legal duty).

They maintain that, if their claim is permitted to go forward, they will seek discovery of information and evidence developed in "*Melissa Bloom v. BioLife Plasma Services*, Case No. CV-2013-8874, an apparently similar case that survived summary judgment." Ps. Br. 11.

To the extent that plaintiffs base their negligent testing claim on an alleged violation of 21 C.F.R. § 610.40(a)(1) and (e), they have failed to plausibly plead that BioLife's conduct violated either of these provisions.[9]  Section 610.40(a)(1) requires that plasma collection companies "[t]est each donation for evidence of infection due to [certain] transfusion-transmitted infections," while § 610.40(e) requires further testing of "each donation . . . found to be reactive by a donor screening test."  Neither provision refers to pooling or requires that each donation be *individually* tested, as plaintiffs argue in their opposition response, and plaintiffs have not alleged that BioLife failed to test or "further test[]" Carver's or Richie's plasma samples, as the regulations require.

In the third amended complaint, plaintiffs generally allege that "[u]pon information and belief, Defendant pools the donations of plasma donors like Plaintiff, such that if any donor is HIV positive, all other donors receive false positive results." 3d Compl. ¶ 37.  But plaintiffs do not allege, either in the third amended complaint or in an attached declaration, that *BioLife* pools its donors' plasma samples or that Carver or Richie initially tested positive for HIV as a result of the practice of pooling.  Moreover, plaintiffs have specifically alleged

---

[9]As with plaintiffs' negligent reporting claim, they rely in their opposition response on the alleged violation of federal regulations that they have not pleaded in their third amended complaint.  Because the court is dismissing plaintiffs' negligent testing claim, it will assume, as it did above, that they have pleaded a violation of these regulations.

that BioLife conducted confirmatory testing on Carver's and Richie's individual plasma samples, *see* supra § II(B), and nowhere allege that the results of this confirmatory testing were impacted by, or even involved, pooling.

To the extent plaintiffs base their negligent testing claim on allegations that BioLife "failed to properly extract, store, process, test, and/or handle plaintiffs' blood plasma samples," Ps. Br. 10, the court holds, for the reasons explained in *Anderson II*, that plaintiffs' conclusory allegation that "defendants breached the[] duties [listed in ¶ 36,] which led to tainted and/or false results," 3d. Compl. ¶ 36, is "insufficient of itself to plausibly plead the breach element of a negligence cause of action," *Anderson II*, 2020 WL 7245075, at *10. Accordingly, the court dismisses plaintiffs' negligent testing claim asserted against BioLife.

IV

Finally, the court considers plaintiffs' claim for fraud based on defendants' alleged failure to disclose certain information.

A

In *Anderson II* the court raised *sua sponte* that, to the extent plaintiffs' fraud claim was based on defendants' alleged failure to disclose certain information—i.e., that they were not subject to medical privacy; that they did not follow procedures in collecting, handling, processing, and screening plasma donations; that known false screening tests would be reported to third parties without consent; and that defendants would refuse to correct records or remove listings when they knew they were erroneous, would refuse to obtain further and confirmatory testing or obtain new samples for testing, would destroy donation samples

without consent, and would place donors on the NDDR even though they knew donors did not have infectious diseases—plaintiffs had failed to plausibly allege that defendants had a duty to disclose the allegedly withheld information. *See Anderson II*, 2020 WL 7245075, at *19.

Plaintiffs maintain in their opposition response that defendants were obligated, under federal regulations, to further test any reactive donor screening (21 C.F.R. § 610.40(e), 21 C.F.R. § 610.46(a)(2)); report the results of further testing to consignees who were previously notified of the initial reactive screening (21 C.F.R. § 610.46(a)(3)); release, destroy, or relabel any previously quarantined blood or blood component samples in accordance with the further testing (21 C.F.R. § 610.46(a)(4)); maintain all information regarding subsequent testing results and other steps performed in accordance with §§ 610.46 and 610.46 (21 C.F.R. § 606.160(b)(viii)); notify a donor who has an initial reactive screening of the initial reactive screen and the results of the required further testing (21 C.F.R. § 630.40(a)); and revise records to remove donors who have met requalification requirements (21 C.F.R. § 606.160(e)(4)). Plaintiffs contend that defendants had a duty to disclose their intent not to follow regulations so that plaintiffs could have made an informed decision not to donate at defendants' plasma centers; that, instead, defendants misled plaintiffs into believing that the defendants would follow federal law, that plaintiffs' samples would be properly handled and tested with reasonable care, as required under federal law, and that the samples would not be reported to the NDDR unless they truly were positive for HIV or Hepatitis C; that in reliance on those representations, without full disclosure based

on federal law, and knowing that they could not be legitimately tested positive for viral diseases given their lifestyles, good habits, and lack of exposure, plaintiffs agreed to donate plasma, which they would not have done had they known that defendants would knowingly report, ban, and stigmatize them based solely on false-positive screening; that defendants knowingly made these misrepresentations and false disclosures to their coconspirator plasma companies and to the NDDR; and that defendants intentionally withheld information regarding plaintiffs' follow-up tests, failing to remove the donors from the NDDR, despite plaintiffs' having met the requalification standards.

B

"As a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose the information." *Anderson II*, 2020 WL 7245075, at *20 (quoting *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001)). A duty to disclose exists:

> (1) where there is a special or fiduciary relationship; (2) where one voluntarily discloses partial information, but fails to disclose the whole truth; (3) where one makes a representation and fails to disclose new information that makes the earlier representation misleading or untrue; [or] (4) where one makes a partial disclosure and conveys a false impression.

*Id.* (*quoting In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, 388 F.Supp.2d 780, 788 (S.D. Tex. 2005)).

The third amended complaint does not plausibly allege that defendants had a duty to disclose with respect to the omissions they plead—i.e., that they were not subject to medical privacy; that they did not follow procedures in collecting, handling, processing, and

screening plasma donations; that known false screening tests would be reported to third parties without consent; and that defendants would refuse to correct records or remove listings when they knew they were erroneous, would destroy donation samples without consent, and would place donors on the NDDR even though they knew donors did not have infectious diseases.

To the extent plaintiffs now contend that defendants had a duty to disclose their intent not to follow federal regulations, not only have plaintiffs failed to plead any such duty in the third amended complaint, they have failed to point to any authority for the proposition that a plasma collection company owes its donors a duty to disclose an intent not to follow certain federal regulations. To the extent plaintiffs contend that defendants "misled [them] into believing that the Defendants would follow federal law, that their samples would be properly handled and tested with reasonable care as required under federal law, and that they would not be reported to the NDDR unless they truly were positive for HIV or Hepatitis C," Ps. Br. 12, they have not pleaded, with the specificity required by Rule 9(b), the "who, what, when, where, and how" of the statements that allegedly caused them to be misled. *United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

Accordingly, for the reasons explained here and in *Anderson II*, the court dismisses plaintiffs' fraud claim in its entirety.

V

The court turns next to CSL's second motion for judgment on the pleadings, which addresses Jackson's defamation and declaratory judgment claims.

A

CSL maintains that Jackson's defamation claim is barred by the one-year statute of limitations. Limitations is an affirmative defense. *See* Rule 8(c)(1). To obtain a dismissal at the Rule 12(c) stage based on an affirmative defense, the "successful affirmative defense [must] appear[ ] clearly on the face of the pleadings." *Cochran v. Astrue*, 2011 WL 5604024, at *1 (N.D. Tex. Nov. 17, 2011) (Fitzwater, C.J.) (quoting *Sivertson v. Clinton*, 2011 WL 4100958, at *2 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.)). In other words, CSL is not entitled to dismissal under Rule 12(c) unless Jackson has "pleaded [her]self out of court by admitting to all of the elements of the defense." *Id.* (quoting *Sivertson*, 2011 WL 4100958, at *3).

"Under Texas law, defamation claims generally are subject to a one-year statute of limitations." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 741 (5th Cir. 2019) (citing Tex. Civ. Prac. & Rem. Code Ann. §§ 16.002(a), 16.003(a) (West 2017); *Jackson v. W. Telemarketing Corp.*, 245 F. 3d 518, 523 (5th Cir. 2001)). The period of limitations begins to run from the date that the cause of action accrues. Tex. Civ. Prac. & Rem. Code Ann. § 16.002(a). Generally, an action for defamation accrues when the defamatory statement is "published" or "circulated," not the date on which the speaker learns that the published statement is defamatory. *Wheeler v. Methodist Hosp.*, 95 S.W.3d 628, 636 (Tex. App. 2002,

no pet.) (citing *Roe v. Walls Reg'l Hosp., Inc*., 21 S.W.3d 647, 651 (Tex. App. 2000, no pet.)).

B

In the third amended complaint, plaintiffs allege that Jackson donated plasma at CSL between November 1-14, 2017 and that "[o]n November 14, CSL wrongly and negligently notified [Jackson] that she had tested positive for [HIV] and that she had been placed on [the NDDR]." 3d Compl. ¶ 23; *see also id.* at Ex. D (alleging that "[o]n or about November of 2017 . . . a CSL representative informed [her] that [she] had allegedly tested positive for HIV [and that her] name and information would be added to the [NDDR].").  CSL moves to dismiss Jackson's defamation claim on the ground that she has pleaded that she learned of CSL's alleged publication of her reactive HIV screen on November 14, 2017, almost two years before she filed this lawsuit on September 27, 2019, and that, given Jackson's allegations and the fact that she has not pleaded the discovery rule or any other mitigating grounds that might toll the running of limitations, the court must dismiss her claim as time-barred.

Jackson responds that she did not become aware of CSL's false reporting to a third party until CSL's lawyer disclosed this information in a letter to her attorney on August 23, 2019, which is well within the one-year limitations period, and that the discovery rule applies in this case because

- 19 -

> [t]here was no possible way for Plaintiff Jackson to have known, even through the exercise of due diligence, that Defendant CSL knew that Plaintiff Jackson was not HIV positive at the time that CSL first informed her that she had been placed on the NDDR or that CSL had proof that she was negative for HIV, yet reported otherwise. Instead, this information was not disclosed until after CSL's counsel stated as such on August 23, 2019.

Ps. Br. 7.

C

The court disagrees with plaintiffs' argument. Generally, a defamation claim accrues when the statement is published or circulated. *Walls Reg'l Hosp.*, 21 S.W.3d at 651. Although the discovery rule is an exception to the statute of limitations, it applies to a defamation claim if the nature of the injury is inherently undiscoverable and evidence of the injury is objectively verifiable. *Coll. Network, Inc. v. Moore Educ. Publ'rs, Inc.*, 378 Fed. Appx. 403, 408 (5th Cir. 2010) (citing *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996)). If the discovery rule applies, the statute of limitations does not begin to run until the defamed person learns of, or in the exercise of reasonable diligence should have learned of, the allegedly defamatory statement. *Wheeler*, 95 S.W.3d at 637.

Jackson's defamation claim is time-barred because plaintiffs clearly and affirmatively plead that she learned that the allegedly defamatory statement had been "published" or "circulated" on November 14, 2017, when the CSL representative informed her that her name had been placed on a national registry of donors (i.e., that the allegedly defamatory statement had been "published" or "circulated"). It is not controlling that Jackson did not learn until August 2019 that CSL knew she was not HIV positive at the time it placed her on the NDDR.

- 20 -

The statute of limitations began to run on the date the allegedly defamatory statement was published, not the date on which the speaker learned that the published statement was defamatory. *See id.* at 636. And because Jackson has pleaded herself out of court by admitting to all of the elements of the limitations defense, the court dismisses her defamation claim.

## VI

CSL next moves to dismiss Jackson's declaratory judgment claim.

### A

CSL posits that "[t]he dismissal of Jackson's defamation claim necessarily requires dismissal of her claim for declaratory relief." D. Br. 4. Plaintiffs respond that Jackson's declaratory judgment claim should survive because she has sufficiently stated a claim for negligence based on the breach of CSL's duty

> to obtain, handle, process, ship, and test Plaintiff's donations with reasonable care to ensure accurate results, to use the proper techniques and procedures, to use the proper equipment, to use non-defective test kits, to avoid contamination of the samples, to timely conduct the tests, and not to erroneously or intentionally report erroneous results, and to correct the records when known to be wrong.

Ps. Br. 8.

### B

The federal Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202, does not create a substantive cause of action. *See Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1179 (5th Cir. 1984) ("The [DJA] . . . is procedural only [.]" (citing

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950))). A declaratory judgment action is merely a vehicle that allows a party to obtain "an early adjudication of an actual controversy" arising under other substantive law. *MetroPCS Wireless, Inc. v. Virgin Mobile USA, L.P.*, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (Fitzwater, C.J.) (quoting *Collin Cty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 170 (5th Cir. 1990)). Federal courts have broad discretion to grant or refuse declaratory judgment. *See, e.g., Evanston Ins. Co. v. Tonmar, L.P.*, 669 F.Supp.2d 725, 732 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991)). "Since its inception, the [DJA] has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The DJA is "an authorization, not a command." *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). It gives federal courts the competence to declare rights, but it does not impose a duty to do so. *Id.* (collecting cases).

The court, in its discretion, declines to adjudicate Jackson's declaratory judgment claim because it is duplicative of her negligence claims, which this court has already addressed and determined should be dismissed. *See, e.g., Metcalf v. Deutsche Bank Nat'l Tr. Co.*, 2012 WL 2399369, at *9 (N.D. Tex. June 26, 2012) (Fitzwater, C.J.) (noting that declaratory judgment action should be dismissed because it duplicated plaintiffs' quiet title claim); *Kougl v. Xspedius Mgmt. Co. of DFW, L.L.C.*, 2005 WL 1421446, at *4 (N.D. Tex. June 1, 2005) (Fitzwater, J.) (denying as redundant a declaratory judgment claim seeking

contract interpretation where this would be resolved as part of breach of contract action). The court therefore grants CSL's motion for judgment on the pleadings with respect to Jackson's declaratory judgment claim asserted against it.

* * *

Accordingly, for the reasons explained, the court dismisses plaintiffs' negligent reporting, negligent testing, and fraud claims on the grounds that it raised *sua sponte* in *Anderson II*, and grants CSL's second motion for judgment on the pleadings. Plaintiffs' action against CSL is dismissed with prejudice by Rule 54(b) final judgment entered today.

**SO ORDERED**.

May 11, 2021.

SIDNEY A. FITZWATER
SENIOR JUDGE